**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLET ITZENN GUZMAN, | Case No. 1:13-cv-01243-SKO |
| Plaintiff, | |
| v. | **ORDER REGARDING PLAINTIFF'S COMPLAINT** |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | **(Doc. 1)** |
| Defendant. | |
| _____/ | |

## I. BACKGROUND

Plaintiff Violet Guzman ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 6, 7.)

## II.   FACTUAL BACKGROUND

Plaintiff was born in 1951, completed high school and some college, and previously worked as an administrative assistant.  (Administrative Record ("AR") 31, 46.)  Plaintiff filed applications for DIB and SSI on July 16, 2010, and June 2, 2011, alleging disability due to anxiety and arthritis in her knees.  (AR 139-47, 153-63, 187.)  She stopped working because of her conditions on April 29, 2010.  (AR 187.)

### A.     Relevant Medical History

On October 22, 2010, Plaintiff underwent a psychiatric evaluation with Ekram Michiel, M.D. (AR 259-62.)   At her examination with Dr. Michiel, Plaintiff complained of stress, depression, anxiety attacks, poor memory, concentration, and mood swings.  (AR 259.)  However, Plaintiff confirmed that she had never been hospitalized for psychiatric reasons, was fully oriented throughout the examination, and could perform simple mathematical calculations.  (AR 259-61.)  Dr. Michiel found that Plaintiff's attention and concentration were "very slightly impaired," her immediate recall was "slightly impaired," but short-term and long-term memory were intact, judgment was fairly intact, and her fund of knowledge was satisfactory.  (AR 261.) Dr. Michiel also noted that Plaintiff's gait and posture were normal.  (AR 260.)  He opined that Plaintiff could maintain attention and concentration to carry out simple job instructions, but was unable to carry out an extensive variety of technical and/or complex instructions.  (AR 61.)

On November 8, 2010, Plaintiff underwent an internal medicine evaluation with Steven Stoltz, M.D. (AR 263-68.)  Dr. Stoltz noted that Plaintiff was in no distress, and although she brought a cane to the examination, she did not appear to use it.  (AR 265.)  He noted, however, that Plaintiff walked into the examination room with short, shuffling steps somewhat dragging both feet as she ambulated.  (AR 267.)  Despite Plaintiff's shuffling gait, Dr. Stoltz's examination revealed normal reflexes, normal sensation, normal muscle strength in all extremities, normal range of motion, negative straight leg raising teat, and no back pain with knee extension while seated.  (AR 14, 265-67.)  Dr. Stoltz diagnosed Plaintiff with (1) chronic low back pain, (2) bilateral knee arthritis, (3) obesity, (4) "psychiatric," (5) hypothyroidism, (6) asthma, (7) obstructive sleep apnea, and (8) Sjogren's syndrome (dry eyes and mouth).  (AR 268.)

2

Dr. Stoltz opined Plaintiff could sit for two hours at any one time without interruption and stand for 60 minutes at one time without interruption. (AR 268.) She could walk short distances, and in a total eight-hour workday sit for four hours, stand for three to four hours, and walk for two hours. Dr. Stoltz recommended a cane for safe ambulation. He also opined Plaintiff could perform frequent, but not continuous, activities with both her hands and feet; she could never climb ladders or scaffolds; and she could only occasionally perform other postural activities. Dr. Stoltz also limited Plaintiff from working at unprotected heights. (AR 268.)

On November 19, 2010, state agency physician A. Garcia, M.D., reviewed Plaintiff's medical records relating to her mental impairments and completed a Psychiatric Review technique. (AR 270-83.) Dr. Garcia opined that Plaintiff did not have a severe mental impairment. (AR 270.) Dr. Garcia further opined that Plaintiff was mildly limited in the areas of daily living, social functioning, maintaining concentration, persistence and pace, and had not experienced any episodes of decompensation. (AR 278.)

On December 3, 2010, state agency physician E. Wong, M.D., reviewed Plaintiff's medical records relating to her physical impairments, and completed a Physical Residual Functional Capacity Assessment. (AR 284-89.) Dr. Wong noted inconsistencies in Plaintiff's presentation of her symptoms to Dr. Jackson and Dr. Stoltz based on their examination notes. (AR 285-86, 289.) Dr. Wong opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and would have some minor non-exertional limitations. (AR 285-88.)

On March 7, 2011, Alvin Green, LCSW, noted that he saw Plaintiff for six counseling sessions. (AR 314.) Plaintiff was taking the antidepressant Cymbalta, which her primary care physician had prescribed. (AR 314.) Mr. Green also reported that during sessions, Plaintiff expressed her interest and ability to return to work, so long as the work was not with the Department of Corrections. (AR 314.) After their sessions concluded, Plaintiff called Mr. Green and left a message inquiring as to whether he knew of any job possibilities for her. (AR 314.)

On April 22, 2011, W. Jackson, M.D., a state agency physician, reviewed the medical evidence of record and completed a Physical Residual Functional Capacity Assessment and a case

analysis.  (AR 315-22.)  Dr. Jackson opined Plaintiff could lift less than 10 pounds frequently and occasionally, stand and/or walk less than 2 hours in an 8-hour workday, sit less than 2 hours in an 8-hour workday, and could only occasionally perform all postural limitations such as crawling, balancing, or crouching.  (AR 316-18.)  As to these exertional limitations, Dr. Jackson noted his opinion was supported by Dr. Stoltz' opinion that Plaintiff needed an assistive device for ambulation.  (AR 316.)

On May 26, 2011, Plaintiff completed a course of 18 physical therapy appointments with Community Outpatient Rehabilitation Center.  (AR 357.)  Allison Meinert, MSPT, a physical therapist, noted that Plaintiff responded well to treatment.  (AR 357.)  The discharge notes reflect Plaintiff indicated her lumbar pain had decreased by 90 percent, and on a 1-10 pain scale, her lumbar pain was 0-1/10, her right shoulder pain was 0/10, and her right neck pain was 3/10.  (AR 357.)  Ms. Meinert noted that Plaintiff's lumbar range of motion was within functional limits in all planes and pain-free, her right shoulder range of motion was within functional limits and pain-free, and her cervical active range of motion was within normal limits, noting only some tightness in Plaintiff's right upper trapezius.  (AR 357.)  Ms. Meinert noted Plaintiff's statement that she had "no limits at home," and put Plaintiff on a home exercise program.  (AR 357.)

On January 19, 2012, Plaintiff completed a course of 12 physical therapy appointments with Barrows Training and Educational Physical Therapy.  (AR 335.)  Yoshi Fujii, DPT, wrote in Plaintiff's discharge report that Plaintiff showed "overall improvement" and was ready to return to "full duty" work.  (AR 335.)

**B.      Plaintiff's Hearing Testimony**

The Commissioner denied Plaintiff's DIB and SSI applications initially and again upon reconsideration. (AR 83-87, 91-96.)  On May 17, 2011, Plaintiff filed a written request for a hearing.  (AR 97-98.)  On May 8, 2012, Plaintiff appeared and testified before an administrative law judge ("ALJ").  (AR 25-52.)

Represented by counsel, Plaintiff testified at a hearing before an ALJ on May 8, 2012. (AR 25-52.)  Plaintiff testified that she had previously performed administrative work for the Department of Corrections.  (AR 31-32.)  Plaintiff stopped working due to stress, anxiety, and

depression.  (AR 33.)  Plaintiff testified that she had developed a skin rash and "different strange illnesses."  (AR 34.)  The stress from work also caused her to develop asthma and teeth grinding.  (AR 34.)   Plaintiff took Cymbalta and Zoloft for her mental conditions.  (AR 43.)   The medications initially made her dizzy and nauseous, but the symptoms had lessened over time.  (AR 43.)

Plaintiff returned to work from September 2011 through April 16, 2012.  (AR 32.)  However, Plaintiff had trouble focusing and remembering at work.  (AR 32.)  Plaintiff noted that psychiatric treatment and medications had been effective.  (AR 32-33.)  She stopped working again in April 2012 because of problems with her lower back, which made her unable to walk at times.  (AR 33.)

Plaintiff broke her left hand on April 23, 2012, and was not working while it healed.  (AR 41.)  Plaintiff testified that she "still ha[d] a job," from which she was on leave due to her broken hand and back pain, and she planned to return to work when her doctor released her to do so.  (AR 41.)

 Plaintiff also testified that she experienced problems with her knees, particularly her left knee.  (AR 34.)  Plaintiff first had arthritis in her knees, and then later developed a cyst on the back of her right leg.  (AR 34-35.)  Plaintiff's knees were "maintaining," and she sometimes needed to use a walker or a cane, which was prescribed, when her knees were inflamed and might give out.  (AR 35.)  Plaintiff could sit for around 30 minutes, stand for 30 minutes, and walk for one block.  (AR 38.)  She could lift 5 to 7 pounds.  (AR 39.)

Plaintiff drove within the city, but not on the freeway because her car had a manual transmission and she needed both hands for steering.  (AR 42.)  She had no energy for social activities, or for baking or sewing.  (AR 42.)  Plaintiff read books using a ruler to keep her vision focused.  (AR 43.)

**C.   The ALJ's Decision**

In a decision dated June 4, 2012, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  (AR 8-19.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  (AR 8-19.)  The ALJ found Plaintiff met the insured

status requirements of the Social Security Act through December 31, 2014.  (AR 10.)  The ALJ found Plaintiff had not performed substantial gainful activity from September 2011 through April 16, 2012.  (AR 10.)  The ALJ found Plaintiff had the medically determinable impairments of osteoarthritis and allied disorders (lower left extremity), disorders of the back (spondylolisthesis), and obesity.  (AR 11.)  She found none of Plaintiff's impairments alone or in combination met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing").  (AR 12-13.)  The ALJ next determined Plaintiff had the residual functional capacity ("RFC")[1] to perform a light work, except with occasional operation of foot control bilaterally.  (AR 13.)  In addition, Plaintiff could never climb ladders, ropes, or scaffolds; she could only occasionally climb ramps or stairs, balance, stop, crouch, kneel, or crawl.    (AR 13.)  Given her RFC, the ALJ determined Plaintiff could perform her past relevant work as an administrative assistant.  (AR 17.)  In the alternative, the ALJ found Plaintiff could also make a successful adjustment to other work existing in significant numbers in the national economy, including file clerk I, informal waitress, or office machine handler.  (AR 17-18).  The ALJ determined Plaintiff had not been under a disability from April 29, 2010, through the date of the decision.  (AR 19.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review.  (AR 1-3.)

**D.      Plaintiff's Contention on Appeal**

Plaintiff claims the ALJ erred in her consideration of Dr. Stoltz and Dr. Michiel's opinions and Plaintiff's credibility.  (Doc. 13, 9-10, 14.)

## III.   SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).

---

[1] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1   Instead, the Court must determine whether the Commissioner applied the proper legal standards

2   and whether substantial evidence exists in the record to support the Commissioner's findings.  *See*

3   *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

4        "Substantial evidence is more than a mere scintilla but less than a preponderance."  *Ryan v.*

5   *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

6   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

7   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,

8   305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both

9   the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and

10  may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v.*

11  *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

12                         **IV.   APPLICABLE LAW**

13       An individual is considered disabled for purposes of disability benefits if he or she is

14  unable to engage in any substantial, gainful activity by reason of any medically determinable

15  physical or mental impairment that can be expected to result in death or that has lasted, or can be

16  expected to last, for a continuous period of not less than twelve months.   42 U.S.C.

17  §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The

18  impairment or impairments must result from anatomical, physiological, or psychological

19  abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic

20  techniques and must be of such severity that the claimant is not only unable to do her previous

21  work, but cannot, considering her age, education, and work experience, engage in any other kind

22  of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3),

23  1382c(a)(3)(B), (D).

24       The regulations provide that the ALJ must undertake a specific five-step sequential

25  analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine

26  whether the claimant is currently engaged in substantial gainful activity.   20 C.F.R.

27  §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the

28  claimant has a severe impairment or a combination of impairments significantly limiting her from

7

1   performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ

2   must determine whether the claimant has a severe impairment or combination of impairments that

3   meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart

4   P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine

5   whether the claimant has sufficient residual functional capacity ("RFC") despite the impairment or

6   various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f).  If not, in the Fifth

7   Step, the burden shifts to the Commissioner to show that the claimant can perform other work that

8   exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a

9   claimant is found to be disabled or not disabled at any step in the sequence, there is no need to

10  consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R.

11  §§ 404.1520, 416.920.

12  <center>**V.  DISCUSSION**</center>

13      Plaintiff contends the ALJ improperly (1) afforded only partial weight to Dr. Stoltz' and

14  Dr. Michiel's opinions, and (2) discredited Plaintiff's testimony.  (Doc. 16, 9-12, 14-16.)

15      The Commissioner responds that the ALJ's decisions to afford partial weight to Drs. Stoltz'

16  and Michiel's opinions were supported by substantial evidence, and the ALJ properly determined

17  Plaintiff's testimony was not credible.  (Doc. 15, 10-13.)

18  **A.      The ALJ Properly Considered Plaintiff's Subjective Testimony**

19      Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting

20  Plaintiff's pain and subjective limitation testimony, and therefore, the Court should credit

21  Plaintiff's testimony as true.  (Doc. 13, 12.)

22      The Commissioner responds that the ALJ provided adequate bases for discrediting

23  Plaintiff's testimony, and the bases were supported by substantial evidence.  (Doc. 15, 13.)

24      **1.      Legal Standard**

25      An ALJ must engage in a two-step analysis in evaluating the credibility of a claimant's

26  testimony regarding subjective pain. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First,

27  the ALJ must determine whether the claimant has presented objective medical evidence of an

28  underlying impairment that could reasonably be expected to produce the pain or other symptoms

<center>8</center>

alleged.  *Id.*  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also, Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929.  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to assure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).  The ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the record, sufficiently specific to make clear the weight the adjudicator gave to the individual's statements and the reasons for that weight.  Social Security Ruling 96-7P.

**2.   The ALJ Gave Clear and Convincing Reasons to Discount Plaintiff's Subjective Lay Testimony**

**a.   The Parties' Arguments**

Plaintiff contends the ALJ erred in discrediting her lay testimony on the ground that it was not supported by the weight of the objective medical evidence and because she had attempted to

return to work between September 2011 and April 2012.  Plaintiff argues her work attempt was a trial work period, which is permitted by the regulations.  She was unable to sustain that employment because of her limitations, despite her best efforts.  Plaintiff contends a failed attempt to work is not a clear and convincing reason to discredit her lay testimony, but instead establishes that Plaintiff cannot work.

According to Plaintiff, the other stated basis for discrediting her testimony was that her symptom testimony was not corroborated by the objective medical evidence.  Plaintiff maintains that a lack of corroborating objective medical evidence may be considered by the ALJ, but it cannot be the sole reason to discount lay testimony.  Because Plaintiff's unsuccessful work attempt was not a proper basis to discount her credibility, the lack of corroborating medical evidence cannot, in and of itself, support the ALJ's credibility finding.

The Commissioner asserts the ALJ considered seven different factors in rejecting Plaintiff's credibility.  The ALJ noted that many of Plaintiff's alleged impairments were unsupported by medical evidence, some of the objective findings contradicted Plaintiff's allegations, medical evidence suggested unreliable test results and behavior by Plaintiff, there was evidence of medical improvement, Plaintiff's daily activities were inconsistent with her allegations, Plaintiff held herself open for work, and despite testifying to severe anxiety and panic attacks, Plaintiff never sought ongoing mental health treatment.

**b.      The ALJ Properly Considered Several Credibility Factors in Discounting the Extent of Plaintiff's Physical Limitations and Pain**

The ALJ's consideration of Plaintiff's lay statements was woven throughout the discussion of the medical evidence. Although Plaintiff contends there were only two stated bases given for discrediting her subjective testimony, the decision reflects the ALJ considered several factors in reaching the ultimate credibility finding.

**(i)      The ALJ Properly Considered Inconsistencies Between Plaintiff's Statements and the Medical Records**

The ALJ reasoned the treatment notes regarding Plaintiff's condition were not consistent with her allegations of debilitating symptoms.  (AR 15.)  The ALJ considered that, although

1   Plaintiff alleged she was prescribed a cane for walking, there is no record of a cane prescription in

2   her treating notes.  (AR 15.)  And, although Plaintiff admitted that she did not need the cane to

3   walk but rather for security in case her knees gave out, the treatment records show no instances of

4   strength failure in her knees supporting the use of a cane for that purpose.   Whether Plaintiff's

5   statements were consistent with the medical evidence is an appropriate credibility determination.

6   *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).  In *Verduzco*, the ALJ discredited the

7   claimant's excess pain and fatigue testimony.  *Id.*   The ALJ noted several areas where the

8   claimant's statements were inconsistent with the medical evidence.  *Id.*  The ALJ discussed that the

9   claimant had walked slowly with the use of a cane at the hearing, although no doctor had ever

10  indicated that the claimant used or needed to use an assistive device to walk.  *Id.*  In affirming the

11  ALJ's reasoning, the appellate court noted that two doctors had specifically noted the claimant did

12  not need an assistive device.  *Id.*  At the hearing, the ALJ noted the claimant also stood up swiftly

13  and took his driver's license out of his wallet when asked without any apparent discomfort, despite

14  his ostensible difficulty walking.  *Id.*  The appellate court concluded that the ALJ had discounted

15  the claimant's testimony because he found it unbelievable in general, not because the extent of the

16  claimant's pain or fatigue was unsupported by the medical evidence.  *Id.*

17       Similar to *Verduzco*, here the ALJ gave several reasons why he doubted Plaintiff's

18  testimony overall with regard to her difficulty walking, rather than only because the medical

19  evidence did not corroborate the extent of her pain and limitations.  Plaintiff appeared for her

20  examination with Dr. Michiel without a cane and exhibited no gait or posture difficulties, but then

21  appeared for her physical compensation examination with Dr. Stoltz three weeks later using a cane

22  and walking with a shuffle.  The ALJ found her presentation of symptoms to be inconsistent.  At

23  the hearing, Plaintiff testified she was prescribed the cane, but no prescription was noted in any of

24  her treatment records.  And, although Plaintiff acknowledged at the hearing that she did not *need*

25  the cane, she said she used it for security in case her knees gave out.  Yet, the ALJ indicated the

26  medical records did not show that there was any instance of strength failure in her knees that

27  would support the use of a cane for this purpose.  (AR 15.)  In light of her medical records, the

28  ALJ thus found Plaintiff's statements about her walking difficulties and need for the cane to be

11

unbelievable in general.  As noted in *Verduzco*, this reasoning is different from discounting pain testimony simply because it is not corroborated by objective test.  Given the discrepancy between Plaintiff's statements and the medical record, this was an appropriate credibility consideration.

<div align="center">

**(ii)** **The ALJ Properly Considered Plaintiff's Improvement With Treatment**

</div>

The ALJ also considered that Plaintiff's symptoms appeared to improve with treatment, which the ALJ found did not corroborate her statements of limitation and pain.  An ALJ may discount a claimant's credibility on the basis of medical improvement.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ noted physical therapy records showing Plaintiff improved with treatment. Between December 2010 and April 2011, Plaintiff was treated for back pain, right-shoulder pain, and neck pain.  (AR 357-60.)  At the conclusion of her treatment, she reported her lumbar pain had improved by ninety percent with active range of motion within functional limits in all planes and she was pain free.  (AR 357.)  She received instructions for independence in maintaining a home exercise program consisting of cervical and right shoulder range of motion and postural strengthening.   (AR 357.)   She also confirmed she had no limits in her activities at home. (AR 357.)

In November 2011, Plaintiff returned to physical therapy for back pain that increased with standing, walking, and movement.  (AR 338.)  Plaintiff reported that her condition improved with stretching, heat, or ice, and she reported swimming as a hobby.  (AR 338.)  Her physical therapy concluded after 12 visits, and discharge notes revealed overall improvement and that she was cleared for full-duty work status.  (AR 335.)

Plaintiff returned to physical therapy in April 2012 at the Sullivan Chiropractic Center for back pain, but after treatment, she reported improvement of her symptoms.  By April 13, 2012, Plaintiff reported feeling a lot better and was ready to return to work.  On April 30, 2012, physical therapy records indicate Plaintiff reported a 50 percent improvement in her pain, which the ALJ found to be another indication of the effectiveness of her treatment.  (AR 365.)

1   Plaintiff's improvement of her pain during the course of each of her periods of physical

2   therapy is evidence that Plaintiff's symptoms are responsive to treatment, and her pain decreases

3   and is managed with periodic physical therapy care.   The ALJ appropriately considered Plaintiff's

4   physical therapy records which showed her back, shoulder, and neck pain was largely alleviated or

5   improved with treatment.   This was a clear and convincing basis for discounting Plaintiff's

6   credibility, in combination with the ALJ's other stated grounds which included inconsistencies

7   between Plaintiff's statements and the medical record as well as Plaintiff's return to work in

8   September 2011 (as discussed further below).

9                    **(iii)    The ALJ Properly Considered Plaintiff's Return to Work in**
                    **September 2011 When She Claimed to Be Disabled**

10

11   The ALJ properly considered Plaintiff's return to work in September 2011 despite alleging

12   disabling conditions precluded her from working.   Specifically, the ALJ noted that Plaintiff

13   returned to working full time as an administrative assistant from September 2011 until April 2012,

14   after she was cleared to return to work as indicated by physical therapy records.   She stopped

15   working in April 2012 because of a fracture to her left hand, for which her physician placed her

16   "off work" until May 7, 2012.   At the May 8, 2012, hearing, Plaintiff acknowledged that her work

17   position was still open to her, and she planned to return to work as soon as her doctor released her

18   back to work.   Although Plaintiff alleged that she was "off work" because of her left-hand fracture

19   *and* her back problems, the ALJ found the record only supported her hand fracture.   The ALJ also

20   determined there was nothing in the treatment records to suggest that her hand would not heal

21   properly preventing her return to work.   The ALJ reasoned that "[b]ecause the record supports the

22   claimant performed her job duties successfully as an administrative assistant from September 2011

23   until she fractured her hand in April 2012, there is no reason to suggest once healed, she would not

24   be able to return to performing duties successfully, despite the history of her alleged back and

25   knee pain."  (AR 15.)

26   Plaintiff argues her return to work was merely a failed work attempt that the ALJ

27   impermissibly considered.   However, neither the ALJ's consideration of the evidence nor the

28   record support Plaintiff's argument.   The ALJ noted the evidence corroborated that Plaintiff's back

condition had improved with therapy and that she returned to work in 2011.  (AR 15.)  She left

work in April 2012 because she fractured her left hand.  At the May 8, 2012, hearing, Plaintiff

testified she still had the job and planned to return when she was cleared for work. (AR 41.)  None

of this evidence shows that Plaintiff's return to work in 2011 was a failed attempt due to disabling

conditions or disabling pain other than that attributable to her acute hand injury in April 2011.

Rather, the evidence supports the ALJ's interpretation that Plaintiff was successfully treated for

her back condition at therapy, returned to work, injured her left wrist and took medical leave,

sought treatment for her hand, and planned to return to work when her doctor allowed her to

return.  Her physical therapy records in April 2012 showed overall improvement, which was

consistent with her two previous courses of physical therapy.  The ALJ also noted Plaintiff's

treatment records showed no indication that her left hand would not heal properly, precluding her

return to work.  Although Plaintiff maintained she left work because of her wrist *and* her back

condition, the ALJ determined the medical records supported only her hand injury – which

appeared to be acute with no complications that would prevent it from healing.  The circumstances

of Plaintiff's return to work in September 2011 and her wrist injury in April 2012 were properly

considered by the ALJ.

### (iv)    Plaintiff's Daily Activities Were Not Adequately Considered

The Commissioner contends the ALJ also discredited Plaintiff because her daily activities,

which included home exercise and swimming, were inconsistent with her allegations of disability.

Plaintiff maintains that these exercises showed her compliance with treatment, and do not detract

from her credibility.  Moreover, there is no evidence of the frequency with which Plaintiff

performed these activities such that they could be considered daily or considered inconsistent with

her pain and limitations.

The ALJ discussed Plaintiff's allegation at the hearing that she could not perform any

activities of daily living such as lifting, moving anything, or cooking, and that she hired someone

to perform those duties once or twice a week.  (AR 14, 15, 40.)  Yet, the ALJ also noted Plaintiff's

physical therapy records showed that, after completing eighteen sessions between December 2010

and April 2011, she experienced improvement of her symptoms, and that she had no limits at

home with activity.  (AR 357.)  The ALJ also indicated Plaintiff reported in October 2010 to Dr. Michiel that she was able to perform all activities of daily living.  (AR 260.)  In November 2011, she returned to physical therapy, but she reported swimming as a hobby.  (AR 338.)  In January 2012, Plaintiff reported overall improvement, and she was instructed on a home exercise program for her neck and right shoulder range of motion as well as postural strengthening.  (AR 335.)

Although the ALJ recited these activities in the decision, it is not clear the reported activities were a consideration in the ALJ's ultimate credibility finding.  At best, the decision suggests the ALJ may have considered Plaintiff's hearing statement that she could perform no household chores as inconsistent with her prior year and a half of physical therapy records and her statement to Dr. Michiel in 2010.  This evidence supports the ALJ's finding that, at the time of her hearing testimony in May 2012, Plaintiff was not out of work or unable to complete home tasks because of her back pain, but because of her wrist injury.  Nevertheless, the ALJ did not articulate this reasoning, and there is nothing in the decision to support an inference that the ALJ disregarded Plaintiff's pain testimony generally because of her daily activities.  Even to the extent these reported activities were considered in reaching the credibility determination, the ALJ's mention of the activities Plaintiff described at physical therapy and to Dr. Michiel – without any reasoning or discussion – does not, standing alone, support a negative credibility finding.  Regardless of the ALJ's consideration of Plaintiff's daily activities, as discussed above, the ALJ offered several other clear and convincing bases for discrediting Plaintiff's testimony about her physical limitations and pain.

### c.  Plaintiff's Testimony Regarding Her Mental Limitations Was Properly Considered

The ALJ also discredited the extent of Plaintiff's alleged mental limitations.  (AR 15-16.) The ALJ noted that although Plaintiff alleged depression, anxiety attacks, poor memory, mood swings, and concentration problems, she had no history of psychiatric hospitalization.  (AR 15-16.)  At her psychiatric compensation examination with Dr. Michiel, the ALJ noted the doctor confirmed that Plaintiff's concentration levels were only slightly impaired and she remained completely independent in caring for her activities of daily living.  (AR 16, 261.)  Although she

attended six counseling sessions, upon a referral for medication with a psychiatrist, there was no record that she follow-up on the referral.  The ALJ noted Plaintiff cancelled her last session with her therapist and never contacted him to resume counseling sessions.  She did contact him, however, in February 2011 to inquire about a job possibility.  (AR 16, 314.)  The ALJ found Plaintiff's lack of follow-up for mental health treatment to be inconsistent with her allegations of total disability due to mental limitations.  The ALJ concluded that because Plaintiff did not seek further treatment and her mental health treatment records suggested that her symptoms remained under control with conservative use of Cymbalta, her allegations of disabling mental limitations were unpersuasive.

Plaintiff argues her failure to secure additional mental health treatment could have been symptomatic of the severity of her mental impairments, and thus the ALJ erred in considering her lack of follow-up treatment.  (Doc. 16, p. 7.)

The evidence, however, does not suggest that Plaintiff was unable to seek follow-up care because of her condition.  She followed-up with physical therapy appointments consistently during this time period, she contacted her counselor to inquire about job possibilities (AR 314), and although she took the initiative to see a general practitioner for a prescription for Cymbalta, she did not follow-up with the psychiatrist recommended by her counselor.  This evidence does not suggest a person unable to secure additional mental health treatment due to the severity of her condition, as Plaintiff asserts.  Moreover, Plaintiff's argument is only an alternative interpretation of the evidence, which is not a sufficient basis to reject the ALJ's credibility analysis.  *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion.").  The ALJ's rejection of Plaintiff's testimony regarding the extent of her mental health limitations is proper and supported by the record.

### d.    Conclusion

In sum, the ALJ properly considered several factors in discounting Plaintiff's credibility.  The ALJ analyzed Plaintiff's various medical records and inconsistencies between those records and her statements.  The ALJ also considered Plaintiff's different presentation of her symptoms at

her compensation examinations in October and November 2010.  Finally, the ALJ considered Plaintiff's improvement with treatment and her return to work in September 2011.  Because Plaintiff admitted that she planned to return to her work as soon as her wrist healed, Plaintiff's "off work" status at the time of the hearing in May 2012 does not reflect a failed attempt to return to work between November 2011 and April 2012.  The ALJ also properly considered the modest examination findings with regard to her mental condition in October 2010 and the fact that she did not pursue further treatment for mental conditions she claimed to be totally disabling.  In sum, the ALJ set forth clear and convincing reasons to discount Plaintiff's credibility.

**B.      The ALJ Properly Weighed the Medical Evidence**

Plaintiff claims the ALJ failed to properly credit Dr. Stoltz' and Dr. Michiel's opinions. (Doc. 13, 9-10.)  Further, Plaintiff asserts the ALJ impermissibly adopted non-examining doctors' opinions simply because they comported with the ALJ's own opinion.  (Doc. 13, 9-11.)

The Commissioner contends the ALJ properly considered the medical evidence and that Plaintiff fails to articulate how the ALJ erred in rejecting either Dr. Stoltz or Dr. Michiel's opinions.  (Doc. 15, 5-6.)

**1.      Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.  *Id*.  In evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and

1   inadequately supported by clinical findings.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

2   2005).

3        The ALJ may provide substantial evidence by setting out a detailed and thorough summary

4   of the facts and conflicting clinical evidence, stating her interpretation thereof, and making

5   findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than

6   offer conclusions; the ALJ must set forth their own interpretations and explain why they are

7   correct.  *Embrey v. Bowen,* 849 F.2d 418, 421–22 (9th Cir. 1988).  The opinion of a non-

8   examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of

9   the opinion of either an examining physician or a treating physician.  *Pitzer v. Sullivan*, 908 F.2d

10  502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984).  In some cases,

11  however, the ALJ can reject the opinion of a treating or examining physician, based in part on the

12  testimony of a non-examining medical advisor.  *See, e.g., Magallanes*, 881 F.2d at 751; *Andrews*

13  *v. Shalala*, 53 F.3d 1035, 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

14        **2.    The ALJ Properly Afforded Partial Weight to Dr. Stoltz' Opinion**

15            **a.    The Parties' Arguments**

16        Plaintiff contends the ALJ's bases for rejecting Dr. Stoltz' opinion were not specific and

17  legitimate.  First, the ALJ rejected Dr. Stoltz' opinions because they tended to rely more on

18  Plaintiff's subjective complaints than on objective examination findings.  Plaintiff maintains that

19  Dr. Stoltz was selected by the agency to provide a compensation examination and thus he has no

20  reason to fabricate or exaggerate the opined limitations.  Plaintiff maintains there is nothing in the

21  record to suggest impropriety on the part of Dr. Stoltz such that the ALJ was justified in rejecting

22  Plaintiff's credibility on this basis.

23        Second, the ALJ noted that Plaintiff demonstrated a problem with her gait during her

24  examination with Dr. Stoltz, but did not exhibit the same gait problem when she underwent a

25  psychiatric examination only weeks prior to the examination with Dr. Stoltz.  Plaintiff argues she

26  saw Dr. Stoltz a month after the psychiatric examination, and it was "highly probable" that her gait

27  had deteriorated between the two examinations.

28

1     Finally, Plaintiff asserts the ALJ assigned great weight to state-agency reviewing physician
2  Dr. Jackson, whose opinion was consistent with Dr. Stoltz.  Plaintiff contends that by accepting
3  the findings and opinions of Dr. Jackson, the ALJ essentially accepted the consistent findings of
4  Dr. Stoltz.  Even to the degree that the ALJ rejected Dr. Stoltz' opinion in light of Dr. Wong's
5  opinion – another non-examining state agency physician –  Dr. Jackson's opinion was the most
6  recent of all the medical opinions, and the single opinion of Dr. Wong should not "trump the
7  combined findings of Drs. Stoltz and Jackson."  (Doc. 13, 10:18-19.)

8     The Commissioner contends the ALJ correctly noted that Dr. Stoltz' examination findings
9  revealed normal reflexes, normal sensation, normal muscle strength in all extremities, normal
10  range of motion, negative straight leg raising, and she had no back pain with knee extension while
11  seated.   Despite these largely normal objective findings, Dr. Stoltz opined to very restricted
12  functional abilities.   Based on this inconsistency, the ALJ properly reasoned that Dr. Stoltz'
13  opinion appeared to rely more on subjective complaints than on objective findings.

14     Second, as to the inconsistency in gait between the two examinations, the Commissioner
15  maintains that Plaintiff's argument that she was probably getting worse between the two
16  examinations is only speculative, and the ALJ was entitled to make a negative inference based on
17  Plaintiff's inconsistent presentation of her symptoms.

18     Finally, as it pertains to Dr. Jackson, his opinion was based on a review of the record
19  which included Dr. Stoltz' opinion – thus Dr. Jackson's opinion suffers from the same
20  shortcomings as that of Dr. Stoltz.  Plaintiff does not explain why the ALJ erred in adopting the
21  limitations opined by Dr. Wong rather than the more extreme limitations of Drs. Stolz and Jackson
22  which were discredited, in part.

23     In her reply brief, Plaintiff contends the Commissioner overlooks that the ALJ afforded
24  great weight to Dr. Jackson's opinion, which was largely consistent with Dr. Stoltz' opinion
25  regarding Plaintiff's limitations.  Plaintiff argues Dr. Jackson's opinion could not suffer from any
26  shortcomings because the ALJ gave it the same weight as Dr. Stoltz' opinion.   The
27  Commissioner's argument that Dr. Wong's opinion supports the ALJ's decision to reject portions
28  of Dr. Stoltz and Dr. Jackson's opinion is post-hoc analysis.

1    Plaintiff also asserts that the Commissioner's argument regarding Dr. Stoltz' reliance on

2    Plaintiff's subjective statements over the objective examinations findings fails to provide anything

3    to establish impropriety on the part of Dr. Stoltz.

4        **b.    Medical Opinion Predicated on Subjective Statements is Properly**

5            **Considered**

6    The ALJ partially discounted the weight of Dr. Stoltz' opinion as predicated more heavily

7    on Plaintiff's subjective complaints – which the ALJ properly found less than fully credible – than

8    upon his own objective examination findings.  Upon examination, Dr. Stoltz noted Plaintiff was in

9    no distress, and while she brought a cane with her to the examination, Dr. Stoltz did not indicate

10   whether she used it.  (AR 265.)  The ALJ correctly noted that Dr. Stoltz's examination revealed

11   normal reflexes, normal sensation, normal muscle strength in all extremities, normal range of

12   motion, negative straight-leg raising test, and no back pain with knee extension while seated.  (AR

13   14, 265-67.)  However, despite the largely normal objective examination findings, Dr. Stoltz

14   opined to restrictive functional limitations, including that Plaintiff would be required to ambulate

15   with a cane.  (AR 268.)  Due to the normal objective findings on examination, the ALJ concluded

16   the functional limitations opined by Dr. Stoltz were predicated more on Plaintiff's subjective

17   testimony than on the objective findings.

18   In making this determination, the ALJ also noted a significant discrepancy between

19   Plaintiff's presentation of her symptoms at a psychiatric examination three weeks earlier, where

20   she exhibited a normal gait and posture and did not present with a cane for balance.  (AR 260.)

21   Because of the close proximity of the two examinations – only three weeks apart – the ALJ was

22   entitled make a negative inference that Plaintiff was exaggerating her symptoms at her

23   examination with Dr. Stoltz.   Dr. Stoltz' largely normal examination findings in conjunction with

24   the different symptom presentation by Plaintiff was a sufficient basis for the ALJ to afford less

25   weight to Dr. Stoltz' more restrictive limitations as being predicated more heavily on Plaintiff's

26   subjective complaints.  *See Morgan v. Comm'r*, 169 F.3d 595, 559 (9th Cir. 1999) (upholding

27   ALJ's decision to discount "any medical findings based on [the claimant's] subjective complaints,

28   including the medical examiners' opinions regarding his ability to work").   While Plaintiff

1   contends there is nothing establishing impropriety on the part of Dr. Stoltz, the ALJ did not reason

2   that Dr. Stoltz was biased or unethical in considering Plaintiff's condition.   Rather, the ALJ

3   considered that Plaintiff presented her symptoms to Dr. Stoltz in a manner very different from her

4   psychiatric examination only three weeks earlier.   Much of Dr. Stoltz' opinion appeared influenced

5   by Plaintiff's subjective statements about her need for a cane as well as her shuffling gait – neither

6   of which was part of her symptom presentation at her psychiatric examination – which were not

7   supported Dr. Stoltz' normal examination findings.

8          Plaintiff's argument that the ALJ essentially credited Dr. Stoltz' opinion by crediting Dr.

9   Jackson's similar reviewing opinion is not convincing.   Dr. Jackson opined Plaintiff was limited to

10  lifting less than 10 pounds on either a frequent or occasional basis; could stand and walk less than

11  two hours in an eight-hour workday; and could sit less than 6 hours in an eight-hour workday.

12  (AR 316.)   The form Dr. Jackson completed asked what evidence supported these conclusions,

13  and Dr. Jackson noted only that his conclusions were supported by Dr. Stoltz' opinion that Plaintiff

14  "needs an assistive device for safe ambulation."   (AR 316.)   Thus, all the exertional limitations

15  opined by Dr. Jackson were predicated on Dr. Stoltz' opinion regarding Plaintiff's need for the

16  cane, which the ALJ found unconvincing in light of her normal gait and posture noted at Plaintiff's

17  psychiatric examination only three weeks prior.   To the extent that Dr. Jackson's opinion was

18  predicated only on Dr. Stoltz' recommendation for a cane, that portion of the opinion was rejected

19  based on the analysis the ALJ performed with regard to Dr. Stoltz' opinions.   Although the ALJ

20  noted that he gave great weight to all the non-examining physicians opinions, including Dr.

21  Jackson, the ALJ expressly discounted the portion of Dr. Stoltz' opinion on which Dr. Jackson had

22  relied.   It is proper for a reviewing court to read an ALJ's discussion of one physician's opinion

23  and draw inferences relevant to other physicians if those inferences are there to be drawn.

24  *Magallanes v. Bowen*, 881 F.2d 747, (9th Cir. 1989) ("As a reviewing court, we are not deprived

25  of our faculties from drawing specific and legitimate inferences from the ALJ's opinion.   It is

26  proper for us to read the paragraph discussion Dr. Pont's findings and opinion, and draw inferences

27  relevant to Dr. Fox's findings and opinion, if those inferences are there to be drawn.").   The Court

28  infers that, while the ALJ stated he gave great weight to Dr. Jackson's opinion, the ALJ did not

1   credit the exertional limitations Dr. Jackson opined that were predicated solely on the portion of

2   Dr. Stoltz' opinion that the ALJ rejected.

3        Instead of the exertional limitations opined by Drs. Jackson and Stoltz, which the ALJ

4   found to be based only on Plaintiff's subjective statements rather than on the normal examination

5   findings, the ALJ credited the exertional limitations opined by Dr. Wong.  Dr. Wong set forth a

6   fairly lengthy discussion of the discrepancy between Plaintiff's gait and posture at her psychiatric

7   exam three weeks prior to her examination with Dr. Stoltz.  Dr. Wong also considered Dr. Stoltz

8   normal examination findings.  Although the ALJ stated that she gave great weight to both Dr.

9   Jackson and Dr. Wong, it is clear from the ALJ's analysis that she did not give weight to the

10  portion of Dr. Jackson's opinion that relied on the rejected portion of Dr. Stoltz' opinion.

11       Plaintiff contends that Dr. Jackson was the physician who rendered the most recent

12  opinion, thus his opinion should be credited over that of Dr. Wong.  However, Dr. Jackson's

13  opinion was signed on April 22, 2011, approximately four months after Dr. Wong reviewed

14  Plaintiff's record.  Plaintiff cites neither new evidence to which Dr. Jackson was privy that Dr.

15  Wong was unable to review, nor evidence showing her condition worsened in the four months

16  between these examinations.  While a more recent examination may be more probative than an

17  older examination, especially if there is evidence a condition worsened between examinations, the

18  mere fact that one opinion is slightly more recent than another is not a basis, in and of itself, to

19  credit the newer opinion.  For the above reasons, the ALJ did not err in affording only partial

20  weight to Dr. Stoltz' opinion, nor did the ALJ err in discounting the portion of Dr. Jackson's

21  opinion that was predicated on the rejected portion of Dr. Stoltz' opinion.

22       **3.      The ALJ Properly Afforded Partial Weight to Dr. Michiel's Opinion**

23       Plaintiff contends the ALJ did not provide specific and legitimate reasons for rejecting the

24  findings of Dr. Michiel, who completed a consultative psychological examination of Plaintiff.

25  (Doc. 13, 11.)  Plaintiff argues that Dr. Michiel's findings were substantiated by the mental status

26  examination.    (Doc. 13, 10.)  Plaintiff points to Dr. Michiel's observation that Plaintiff was

27  "depressed" and her affect restricted substantiation of Dr. Michiel's opinion that Plaintiff is limited

28  to less complex instructions.  (Doc. 13, 10.)  Further, to the extent the ALJ credited the opinion of

1    Dr. Garcia over that of Dr. Michiel, Dr. Garcia never examined Plaintiff and his opinion should

2    not be given controlling weight.

3          Upon examination, Dr. Michiel found that Plaintiff's attention and concentration were

4    "very slightly impaired," and her immediate recall was "slightly impaired." (AR 261.) Plaintiff's

5    short-term and long-term memories were intact, her judgment was fairly intact, and her fund of

6    knowledge was satisfactory. (AR 261.) Dr. Michiel opined Plaintiff could relate and interact with

7    coworkers, supervisors, and the general public. (AR 261.) Plaintiff could maintain attention and

8    concentration to carry out simple job instructions. However, Dr. Michiel opined Plaintiff could

9    not carry out an extensive variety of technical and/or complex instructions. (AR 261.) The ALJ

10   afforded partial weight to Dr. Michiel's opinion because the objective evidence from Dr. Michiel's

11   examination did not support his conclusion that Plaintiff was limited to instructions that were less

12   complex. (AR 261.)

13         Plaintiff provides no support for the assertion that her noted depressed mood and restricted

14   affect by Dr. Michiel support a restriction to only simple tasks. In his decision, the ALJ properly

15   noted that the objective medical record revealed very little evidence of a disabling mental

16   impairment, and properly explained he discredited Dr. Michiel's opinion because the objective

17   examination findings did not support the limitations to which he opined. (AR 15.) The ALJ is

18   entitled to discredit a physician's opinion to the extent it is conclusory or unsupported by clinical

19   findings. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ need not accept

20   the opinion of a doctor if it is inadequately supported by clinical findings).

21         The ALJ's RFC was supported by Dr. Garcia's opinion that Plaintiff's functional limitations

22   were only mild. (AR 278.) Plaintiff contends that because Dr. Garcia was not an examining

23   physician, his opinion should not be given controlling weight. The opinion of a non-examining

24   physician may serve as substantial evidence when it is consistent with other independent evidence

25   in the record. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); *see also Andrews v.*

26   *Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be

27   discounted and may serve as substantial evidence when they are supported by other evidence in

28   the record and are consistent with it"); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir.

1  1993) ("the non-examining physicians' conclusion, *with nothing more*, does not constitute

2  substantial evidence") (internal quotation marks and citation omitted).  Here, the ALJ considered

3  Dr. Garcia's opinion along with Plaintiff's treatment records.  He noted that most of her psychiatric

4  treatment came from her general practitioner, and there was no indication she sought any ongoing,

5  long-term psycotherapy treatment with any mental health specialists.  (AR 17.)  The ALJ noted

6  that Dr. Garcia also relied on objective medical evidence in formulating his opinion.

7      The ALJ properly assigned partial weight to Dr. Michiel's opinion for the specific and

8  legitimate reason that the objective evidence did not support Dr. Michiel's opinion that Plaintiff

9  was unable to carry out an "extensive variety of technical and/or complex instructions."  The ALJ

10  did not err in relying on Plaintiff's treatment records, Dr. Michiel's examination findings, and Dr.

11  Garcia's opinion in reaching the conclusion that Plaintiff was not limited only to simple tasks.

12                              **VI.   CONCLUSION AND ORDER**

13      Based on the foregoing, the Court finds the ALJ's decision is supported by substantial

14  evidence of the record as a whole and is based on proper legal standards.  Accordingly, the Court

15  DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

16  Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn

17  W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Violet Itzenn Guzman.

18
19  IT IS SO ORDERED.

20      Dated:   **January 5, 2015**                    **/s/ Sheila K. Oberto**
                                            UNITED STATES MAGISTRATE JUDGE